**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **1800 FARRAGUT INC.**, d/b/a The Borough Pub,<br><br>Plaintiff,<br><br>*v.*<br><br>**UTICA FIRST INSURANCE COMPANY,**<br><br>Defendant. | **CIVIL ACTION**<br><br>**NO. 20-3449-KSM** |

**MEMORANDUM**

**MARSTON, J.** **September 16, 2021**

This is a declaratory judgment action in which Plaintiff 1800 Farragut Inc. seeks a declaration that its business losses associated with the COVID-19 pandemic are covered by its insurance contract with Defendant Utica First Insurance Company. (Doc. No. 1.) Presently before the Court is 1800 Farragut's Motion on the Issue of Targeted Discovery Related to the Virus Exclusion, which seeks targeted discovery related to the meaning of the "virus exclusion" in its insurance policy. (Doc. No. 14.) Utica First opposes this motion, arguing that the virus exclusion is clear and unambiguous, and that 1800 Farragut seeks broader discovery than it represented in its Motion. (Doc. No. 15.) For the reasons that are discussed below, the Court denies 1800 Farragut's Motion.

I.

Taking the allegations in 1800 Farragut's Complaint as true, the relevant facts are as follows.

1800 Farragut owns and operates a restaurant and bar known as the Borough Pub, which is located in Springfield, Pennsylvania. (Doc. No. 1 at ¶ 9.) 1800 Farragut maintains an

insurance policy for the Borough Pub with Utica First. The policy covers, among other things, 1800 Farragut's "business personal property, business income, special business income, and professional business income." (*Id.* at ¶¶ 11–12, 17; *see also, e.g.*, Doc. No. 8 at p. 116.)[1] Importantly, the policy covers losses due to business interruption, including interruptions that result from government orders. (Doc. No. 1 at ¶¶ 22, 24; *see also* Doc. No. 8 at pp. 116–18.) 1800 Farragut has timely paid its insurance premiums, upholding its end of the insurance contract. (*See* Doc. No. 1 at ¶ 18.) The insurance policy contains the following "virus exclusion," which is the subject of the instant Motion:

> **Virus Or Bacteria** – "We" do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.
>
> This exclusion applies to, but is not limited to, any loss, cost, or expense as a result of:
>
> a. any contamination by any virus, bacterium, or other microorganism; or
>
> b. any denial of access to property because of any virus, bacterium, or other microorganism.
>
> This exclusion does not apply to loss, cost, or expense resulting from "fungus or related perils".
>
> This exclusion supersedes the "terms" of any other exclusions referring to "pollutants" or to contamination with respect to any loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

(Doc. No. 8 at p. 122.)

[1] Although, at this stage of the litigation, the Court takes all allegations in the Complaint as true and draws all inferences in favor of 1800 Farragut, the Court relies on the parties' insurance agreement, attached to Utica First's Answer, as a document that is both integral to and explicitly relied upon in the Complaint, the authenticity of which is not challenged. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

The language in the insurance policy—including the virus exclusion—is "essentially standardized language adopted from and/or developed by the [Insurance Services Office ('ISO')]"—an insurance trade organization.[2] (Doc. No. 1 at ¶ 25.)[3] The ISO developed its pattern virus exclusion following the SARS outbreak that occurred in the mid-2000s. (*Id.* at ¶ 29.) When the ISO presented this version of the virus exclusion to insurance regulators, it assured them that property insurance policies already did not cover losses caused by viruses, and the exclusion was merely meant to clarify existing law. (*Id.* at ¶ 30.)

The Borough Pub was severely impacted by several so-called "shutdown orders" issued by the state of Pennsylvania during the COVID-19 pandemic. (*See id.* at ¶¶ 54–56, 59–61, 65, 67–70, 79.) Specifically, the orders prevented 1800 Farragut from operating the Borough Pub for a time, and then strictly limited the terms on which it could operate the restaurant, for instance by prohibiting indoor dining. (*Id.* at ¶¶ 54–56, 59–61; *see also* Doc. No. 1-2; Doc. No.

---

[2] The Court takes judicial notice of the ISO's pattern virus exclusion, which is explicitly referenced in 1800 Farragut's Complaint (*see* Doc. No. 1 at ¶¶ 25, 28–30), and provides in relevant part:

> B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.
>
> However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.
>
> C. With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

*See* LARRY PODOSHEN, SENIOR ANALYST, ISO, NEW ENDORSEMENTS FILED TO ADDRESS EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA 8 (July 6, 2006), https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf.

[3] The Court acknowledges Utica First's position that the virus exclusion comes from "a policy form prepared by the American Association of Insurance Services ('AAIS')," not the ISO. (Doc. No. 15-1 at pp. 26–27.) At this juncture, however, the Court must take as true the factual allegations in 1800 Farragut's Complaint.

1-3; Doc. No. 1-4; Doc. No. 1-5; Doc. No. 1-6.) As a result of these orders, 1800 Farragut "completely suspended its ordinary operations [of the Borough Pub] as of March 19, 2020." (Doc. No. 1 at ¶ 68.) Failure to do so, or to otherwise not comply with the shutdown orders, could have subjected 1800 Farragut to "fines and sanctions" from the government. (*Id.* at ¶ 65.)

II.

1800 Farragut brought this suit on July 14, 2020, seeking a declaration that its insurance policy provides coverage for losses sustained due to "any current and future closures of businesses such as [its own] in Pennsylvania due to physical loss or damage from the Coronavirus and/or the pandemic." (*Id.* at ¶ 86.) On September 10, 2020, Utica First filed its Answer and denied that 1800 Farragut's policy provided coverage for any losses due to the COVID-19 pandemic; Utica First specifically cited to the virus exclusion as one reason for this purported lack of coverage. (Doc. No. 8.)

The Court held a preliminary pretrial conference on November 4, 2020. During that conference, Utica First indicated that it intended to file a motion for judgment on the pleadings. 1800 Farragut requested the opportunity to conduct "targeted discovery" on the origins and meaning of the virus exclusion before such a motion was filed, arguing that discovery was necessary to provide the Court with a sufficient record. That same day, the Court issued an Order directing the parties to file briefing regarding the necessity of targeted discovery. (Doc. No. 13.)

1800 Farragut filed its Motion on the Issue of Targeted Discovery Related to the Virus Exclusion on November 25, 2020. (Doc. No. 14.) 1800 Farragut argues that the Court should allow discovery related to the virus exclusion because the language of the exclusion is ambiguous and because discovery could show that Utica First is estopped from arguing that the

virus exclusion covers this kind of situation. (Doc. No. 14-1 at pp. 10, 14–15.) On December 11, 2020, Utica First filed its Response in Opposition, arguing that the virus exclusion is unambiguous, that 1800 Farragut's reasonable expectations and regulatory estoppel theories are inapposite, and that the discovery 1800 Farragut seeks is broader than it represented in its Motion. (Doc. No. 15-1 at pp. 12, 18–19, 23.) A week later, 1800 Farragut filed its Reply. (Doc. No. 16.) Utica First filed a Sur-Reply (Doc. No. 17), and 1800 Farragut filed a Sur-Sur-Reply (Doc. No. 18).[4] The matter is now ripe for disposition.

III.

For suits brought in federal court, discovery is governed by Federal Rule of Civil Procedure 26, which provides in relevant part that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). For the sake of maintaining proportionality, courts may allow targeted discovery into a particular issue, particularly when discovery will reveal information that will fully resolve the parties' dispute or lay bare a fundamental deficiency in a party's claim or defense. *See, e.g.*, *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 596 (3d Cir. 2020); *Choice is Yours, Inc. v. Williams*, No. 2:14-cv-01804, 2016 WL 5661709, at *2 (E.D. Pa. Sept. 30, 2016).

[4] In its Sur-Sur-Reply, 1800 Farragut argued that Utica First filed its Sur-Reply "without a motion or permission from the Court in complete contravention to th[e] Court's Order." (Doc. No. 18 at p. 1.) The Court notes that, while the November 4 Order did not provide dates for sur-reply briefs, it did not forbid them either. (Doc. No. 13.) Moreover, the Court's policies and procedures provide that "[r]eply and sur-reply briefs may be filed without leave of Court." Judge Marston's Policies and Procedures II.B.4, http://www.paed.uscourts.gov/documents/procedures/marpol.pdf. As such, it is somewhat befuddling why 1800 Farragut felt the need to file its Sur-Sur-Reply. That 1800 Farragut is flabbergasted by Utica First's temerity in filing a sur-reply brief is even more bemusing given that *1800 Farragut raised new arguments in its reply brief*. (*See* Doc. No. 16 at pp. 9–10.)

IV.

1800 Farragut argues that the Court should allow targeted discovery into the virus exclusion for two reasons: First, because the virus exclusion is ambiguous, and second, because regulatory estoppel prevents Utica First from arguing that the virus exclusion bars coverage in this case. Neither argument is convincing. In so ruling, the Court joins the growing number of judges who have rejected attempts by plaintiffs in insurance litigation cases arising out of the COVID-19 pandemic to take discovery into the relationship between insurance industry groups' model virus exclusions and the virus exclusion in the plaintiff's insurance contract. *See, e.g.*, *Boscov's Dep't Store, Inc. v. Am. Guar. & Liab. Ins. Co.*, _ F. Supp. 3d _, 2021 WL 2681591, at *8 n.7 (E.D. Pa. 2021); *Mareik Inc. v. State Farm Fire & Cas. Co.*, _ F. Supp. 3d _, 2021 WL 1940647, at *7 (E.D. Pa. 2021); *ATCM Optical, Inc. v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 513, 524–25 (E.D. Pa. 2021); *TAQ Willow Grove, LLC v. Twin City Fire Ins.*, 513 F. Supp. 3d 536, 547–48 (E.D. Pa. 2021); *Moody v. Hartford Fin. Grp., Inc.*, 513 F. Supp. 3d 496, 513 (E.D. Pa. 2021); *see also, e.g.*, *Body Physics v. Nationwide Ins.*, _ F. Supp. 3d _, 2021 WL 912815, at *5–6 (D.N.J. 2021); *Del. Valley Plumbing Supply, Inc. v. Merchs. Mut. Ins. Co.*, _ F. Supp. 3d _, 2021 WL 567994, at *6 (D.N.J. 2021); *Cibus LLC v. Eagle W. Ins. Co.*, No. CV-20-00277-TUC-JGZ (DTF), 2021 WL 1566306, at *5 (D. Ariz. Jan. 21, 2021), *report and recommendation adopted*, 2021 WL 1100376 (D. Ariz. Mar. 23, 2021); *Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*, 508 F. Supp. 3d 575, 582–83 (N.D. Cal. 2020); *Border Chicken AZ LLC v. Nationwide Mut. Ins. Co.*, 501 F. Supp. 3d 699, 706 (D. Ariz. 2020).

A.

The Court first addresses 1800 Farragut's argument that the virus exclusion is

ambiguous.[5] Under Pennsylvania law, a contract's terms "are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). However, courts must not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity," and must give effect to a contract's clear and unambiguous terms. *Id.* 1800 Farragut asserts that the virus exclusion is ambiguous in three ways: (1) it is unclear whether the exclusion applies to a pandemic (Doc. No. 14-1 at p. 6), (2) it is unclear whether the exclusion applies to civil authority orders issued as a result of a pandemic (*id.* at p. 7), and (3) it is unclear what the exclusion means by the word "virus" (Doc. No. 16 at p. 9). Utica First disagrees on all

[5] 1800 Farragut maintains that additional evidence is necessary to make clear what the parties' expectations were about the meaning of the virus exclusion (*e.g.*, Doc. No. 14-1 at pp. 6, 9) and that "virus" may have a specialized meaning within the insurance industry (Doc. No. 16 at pp. 9–10). It is unclear whether these are supposed to be separate arguments, as Utica First construes them (*e.g.*, Doc. No. 17 at pp. 8–9), or if they are subsidiary to 1800 Farragut's ambiguity argument. In either event, neither argument is availing.

First, 1800 Farragut's Complaint states that "Plaintiff purchased the Policy with an expectation that it purchased a policy that would provide coverage in the event of business interruption and extended expenses, such as that suffered by Plaintiff as a result of COVID-19." (Doc. No. 1 at ¶ 32.) But 1800 Farragut has provided no explanation, in the Complaint or in any of its subsequent briefing, as to *why* it believed that interruptions owing to a pandemic would be covered by the policy, in the face of plain and unambiguous language in the contract stating that coverage would not be provided for losses owing to a virus, including in situations where a virus prevented access to the property. (Doc. No. 8 at p. 122.) In the absence of such circumstances, the Court finds, as have other judges in this District when faced with similar disputes, that 1800 Farragut has failed to allege facts supporting the invocation of the reasonable expectations doctrine. *See Landsdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*, _ F. Supp. 3d _, 2021 WL 1667424, at *12 (E.D. Pa. 2021) (citing *Moody*, 513 F. Supp. 3d at 507).

As for 1800 Farragut's position that discovery is necessary to determine whether "virus" has a particularized meaning within the insurance industry (Doc. No. 16 at pp. 9–10), the Court need not consider this argument, which was raised for the first time in 1800 Farragut's reply brief. *See Hayes v. Silvers, Langsam & Weitzman, P.C.*, 441 F. Supp. 3d 62, 66–67, nn. 4–5 (E.D. Pa. 2020); *McCowan v. City of Philadelphia*, Civil Action No. 2:19-cv-03326-KSM, 2020 WL 6485097, at *3 n.5 (E.D. Pa. Nov. 4, 2020). And, even if the Court were to address the argument on its merits, it would be unavailing: Pennsylvania allows parol evidence of industry custom to help determine a contract's terms only in situations in which those terms are ambiguous. *See Good v. Frank & Eddie's Hanover Inn, LLP*, 171 A.3d 792, 796 (Pa. Super. Ct. 2017); *Cnty. Line/New Brit. Realty, LP v. Harleysville Nat'l Bank & Trust Co.*, Nos. 1796 EDA 2012 & 1833 EDA 2012, 2013 WL 1125565, at *11–13 (Pa. Super. Ct. Aug. 16, 2013).

counts. (Doc. No. 15-1 at pp. 12–16; Doc. No. 17 at pp. 4–7.) The Court agrees with Utica First that there is no ambiguity.

First, 1800 Farragut's argument to the contrary notwithstanding, the virus exclusion unambiguously applies to a pandemic caused by a virus. The policy provides that Utica First will not cover "loss, cost, or expense" caused directly or indirectly by "any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or is capable of causing disease, illness, or physical distress." (Doc. No. 8 at p. 122.) In interpreting a nearly identically worded virus exclusion, another judge in the Eastern District held that "[t]here is no other way to characterize COVID-19 than as a virus which causes physical illness and distress." *Handel v. Allstate Ins. Co.*, 499 F. Supp. 3d 95, 100 (E.D. Pa. 2020). 1800 Farragut's attempt to construe "virus" as meaning only "a contained contamination on a property which could cause discrete instances of illness" (Doc. No. 14-1 at p. 6) flies in the face of the plain language of the exclusion, which explicitly provides that it "is not limited to . . . any *contamination* by any virus, bacterium, or other microorganism" (Doc. No. 8 at p. 122 (emphasis added)). 1800 Farragut's policy, like other similar policies courts have considered, unambiguously applies to pandemic-causing viruses. *See Handel*, 499 F. Supp. 3d at 100; *see also, e.g.*, *Mareik*, 2021 WL 1940647, at *6; *Moody*, 513 F. Supp. 3d at 496; *Wilson*, 492 F. Supp. 3d at 427–28.

1800 Farragut's second argument, that the virus exclusion is ambiguous because it is not clear whether it covers losses caused by civil authority orders issued in response to a pandemic, also fails. By its own terms, the virus exclusion "applies to . . . any loss, cost, or expense as a result of . . . any denial of access to property because of any virus, bacterium, or microorganism." (Doc. No. 8 at p. 122.) As 1800 Farragut pleaded in its Complaint, its claims arise out of the losses it incurred as a result of several orders from the Pennsylvania government,

which restricted access to restaurants and bars. (*E.g.*, Doc. No. 1 at ¶¶ 67–68.) Those orders, in turn, were explicitly issued in response to the COVID-19 pandemic. (*E.g.*, Doc. No. 1-2 at p. 2.) Just as "[t]here is no other way to characterize COVID-19 than as a virus which causes physical illness and distress," *Handel*, 499 F. Supp. 3d at 100, there is no way to characterize the relevant civil authority orders than as a denial of access to the Borough Pub because of a virus. Therefore, the virus exclusion unambiguously applies to losses arising from civil authority orders issued in response to a pandemic-causing virus. *See Mareik*, 2021 WL 1940647, at *6; *Moody*, 513 F. Supp. 3d at 510.

Finally, 1800 Farragut argues that the virus exclusion is ambiguous, because it refers to losses caused by "any virus, bacterium, or other microorganism." (Doc. No. 16 at p. 9.) Because viruses are not microorganisms, 1800 Farragut says, and because its policy with Utica First refers to "any virus . . . or other microorganism," it is unclear what the policy means by "virus." (*Id.*) Admittedly, the inclusion of "or other microorganism" after the serial comma implies that "or other microorganism" modifies both "virus" and "bacterium." However, while it is true that the definition of life and whether viruses meet that definition are questions that continue to puzzle biologists and philosophers,[6] this does not introduce ambiguity into the plain language of the virus exclusion. It is clear from the face of the policy that the exclusion applies to losses caused by vectors of transmissible disease, such as the COVID-19 virus. *See Handel*, 499 F. Supp. 3d at 100.

1800 Farragut has failed to plead facts tending to show that the virus exclusion in its policy is ambiguous. As such, discovery into the meaning of the virus exclusion is irrelevant to

[6] *See, e.g.*, *Are Viruses Alive?*, MICROBIOLOGY SOC'Y (May 10, 2016), https://microbiologysociety.org/publication/past-issues/what-is-life/article/are-viruses-alive-what-is-life.html (presenting competing arguments from microbiologists regarding whether viruses may be considered "alive").

any party's claims or defenses and will not be allowed.

B.

Next, the Court turns to 1800 Farragut's argument that regulatory estoppel prevents Utica First from arguing that the virus exclusion bars coverage in this case. Under Pennsylvania law, the doctrine of regulatory estoppel "prohibits parties from switching legal positions to suit their own ends." *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1192 (Pa. 2001). For example, "[i]f an insurer represented to a regulatory agency that new language in a policy would not result in decreased coverage," regulatory estoppel would prevent the company from "assert[ing] the opposite position when insureds raise the issue in litigation." *Moody*, 513 F. Supp. 3d at 511. To establish a claim for regulatory estoppel, 1800 Farragut must demonstrate that Utica First (1) "made a statement to a regulatory agency" and (2) "later adopted a position contrary to the one presented to the regulatory agency." *Id.* (citing *Simon Wrecking Co. v. AIU Ins. Co.*, 541 F. Supp. 2d 714, 717 (E.D. Pa. 2008)).

Utica First argues that 1800 Farragut is not entitled to discovery on this point because 1800 Farragut did not plead any facts alleging that Utica First's position regarding the virus exclusion is contrary to any position that insurance industry groups have made before regulatory groups. (Doc. No. 15-1 at pp. 27–28.) Utica First is correct. 1800 Farragut alleges in its Complaint that state insurance regulators permitted insurance companies to add virus exclusions to their insurance contracts based on "misleading and fraudulent statements by the ISO that property insurance policies do not and were not intended to cover losses caused by viruses." (Doc. No. 1 ¶ 30.) According to 1800 Farragut, "before the ISO made such baseless assertions, courts considered contamination by a virus to be physical damage." (*Id.*) 1800 Farragut alleges that Utica First's reliance on the virus exclusion to deny coverage in this case demonstrates that

the virus exclusion "was fraudulently adopted, adhesionary, and unconscionable." (*Id.*) The Court does not agree.[7]

Although courts have found regulatory estoppel may apply when "an industry" makes representations to regulators which are later contradicted by its members, the attribution of an industry's statements to a particular company only applies in circumstances in which an industry group made representations *on behalf* of the company. *See Hussey Copper, Ltd. v. Arrowood Indem. Co.*, 391 F. App'x 207, 211 (3d Cir. 2010); *Moody*, 513 F. Supp. 3d at 512; *Handel*, 499 F. Supp. 3d at 100–01. Here, the complaint merely alleges that the ISO made representations about the exclusion to regulators. (Doc. No. 1 at ¶ 30.) There are no allegations that Utica First made any representations to insurance regulators about the virus exclusion, or that any such representations were made on Utica First's behalf. Therefore, 1800 Farragut fails to establish the first element of regulatory estoppel.

Second, even assuming that the ISO did present its model virus exclusion to insurance regulators on Utica First's behalf, there is no indication that the ISO's representations to regulators are contrary to Utica First's position that the virus exclusion precludes coverage in this case.[8] Allegedly, the ISO told regulators that even pre-virus exclusion insurance contracts did not cover losses caused by viruses, and that "the Virus Exclusion offer[ed] mere clarification of existing law." (Doc. No. 1 at ¶ 30.) The ISO's pattern virus exclusion, which provides that

---

[7] This is not the first case in which 1800 Farragut's counsel have advanced this position in business insurance litigation related to the COVID-19 pandemic. *See, e.g.*, *Mareik Inc.*, 2021 WL 1940647, at *7; *Moody*, 513 F. Supp. 3d at 511–12; *ATCM Optical, Inc.*, 513 F. Supp. 3d at 524–25. Those courts found that ISO's representations to insurance regulators did not estop an insurance company from taking the position that the virus exclusion bars coverage for losses due to the COVID-19 pandemic.

[8] This same conclusion applies even accepting Utica First's position that its virus exclusion was written by the AAIS, not the ISO (*see* Doc. No. 15-1 at p. 27), as courts have found that insurers arguing that the virus exclusion prevents recovery are taking the same position as the AAIS did before regulators, *see, e.g.*, *Handel*, 499 F. Supp. 3d at 101.

"[w]e will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease," is consistent with this representation. Utica First takes the same position here: it argues that 1800 Farragut's claims are "barred and/or limited by the various terms of the governing insurance policy," including the virus exclusion. (Doc. No. 8 at p. 6 ¶ 3.) Since both the ISO and Utica First claim that the virus exception prevents recovery for losses caused by viruses, 1800 Farragut fails to establish the second element of regulatory estoppel as a matter of law. *See, e.g.*, *Moody*, 513 F. Supp. 3d at 512; *Handel*, 499 F. Supp. 3d at 101.

1800 Farragut attempts to avoid this conclusion by arguing that the insurance industry may have misrepresented the impact or import of the virus exclusion when presenting it to regulators. (Doc. No. 14-1 at p. 14.) Assuming these facts are true, they may support some claim, but cannot support a claim for regulatory estoppel where, as here, the representation allegedly made to regulators—that the virus exclusion prevents recovery for business losses caused by viruses—is the same argument subsequently made by the insurer in litigation.

Because 1800 Farragut has failed to plead facts tending to show that regulatory estoppel applies,[9] discovery into the origins of the virus exclusion would be inappropriate: it would not reveal "nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

---

[9] In its Reply, 1800 Farragut argues that "[w]hen Plaintiff alleges in its complaint that state insurance regulators relied on the insurance industry's representations when approving the disputed language without an accompanying reduction in premiums to balance the reduction in coverage, Plaintiff has properly pleaded a claim for regulatory estoppel." (Doc. No. 16 at p. 12.) This is a misstatement of the elements of regulatory estoppel.

V.

For these reasons, the Court denies1800 Farragut's Motion for Targeted Discovery.

An appropriate Order follows.